Filed 5/26/21  P. v. Baldino CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>BRIAN BALDINO,<br><br>    Defendant and Appellant. | D078440<br><br><br><br>(Super. Ct. No. SCD258141) |

APPEAL from an order of the Superior Court of San Diego County, Roderick W. Shelton, Judge.  Affirmed.

Sheila O'Connor, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

In 2016, Brian Baldino was charged, along with another person with murder.  A mistrial was declared in Baldino's case.  In 2017, Baldino pleaded guilty to voluntary manslaughter (Pen. Code,[1] § 192, subd. (a)).  Baldino also

---

[1]    All further statutory references are to the Penal Code.

admitted he was armed with a firearm (§ 12022, subd. (a)(1)).  Baldino was sentenced to the stipulated term of 12 years in prison.

In 2019, Baldino filed a form petition for resentencing under section 1170.95.  The court did not appoint counsel or hold a hearing.[2]  The court denied Baldino's petition by written order finding Baldino's conviction of voluntary manslaughter rendered him ineligible for relief under section 1170.95.  The court found Baldino had failed to make a prima facie case for relief under the statute.

Baldino filed a timely notice of appeal.

Appellate counsel has filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) indicating counsel has not been able to identify any arguable issues for reversal on appeal.  Counsel asks the court to review the record for error as mandated by *Wende*.  We offered Baldino the opportunity to file his own brief on appeal, but he has not responded.

STATEMENT OF FACTS

Counsel has summarized the facts of the offense as they are contained in the probation officer's report.  We incorporate these background facts here for convenience.

On February 10, 2008, Ms. Varano lent her car, a black Mustang, to her boyfriend, Mr. Sumner, who then let two others test drive it to see if it could be fixed.  The men who took it, one of them Destin Withers, the co-defendant, did not return the Mustang.  It was later found in an apartment complex parking lot.

---

[2]    The trial court should have appointed counsel at the early prima facie stage.  (*People v. Lewis* (2020) 43 Cal.App.5th 1128, review granted Mar. 18, 2020, S260598.)  However, since Baldino is ineligible for relief as a matter of law, we are satisfied Baldino was not prejudiced by the failure to timely appoint counsel.

The next day, the victim, Mr. Vogler, visiting family from Oregon, was working at the carnival and then headed out to drink beers and play pool at the Lakeside Roundup, a nearby bar with friends, Sanchez and LaLanne. They left the bar to go get more money back at the carnival and to use methamphetamine.

That same night, Mr. Mora, working at the drive-through at Taco Bell, located near the Lakeside Roundup, saw a black car, described as a Mustang or a Camaro, idling facing the street. The two white men inside the car had shaved heads and the passenger had a gun. He thought they were there to rob the Taco Bell but instead saw the passenger get out, and the car go in reverse. Mora then heard gunshots minutes later, so he went outside and saw a man, later identified to be Vogler, lying in the parking lot in front of Inkers Tattoo.

Two other witnesses also heard the gunshots and saw a black sports car turn out of the Taco Bell parking lot and onto Prospect Avenue. They saw two men with shaved heads in the car and a third person running in the parking lot towards the Lakeside Roundup Bar.

Mr. Vogler passed away from gunshot wounds at the hospital. The police found three 9mm bullet casings in the Taco Bell lot entrance and a 9mm bullet. The police understood they were looking for a black Mustang or Camaro and a day later, received a call from Ms. Varano that she had located her missing black Mustang less than a mile from the site of the shooting.

During their ongoing investigation, the sheriffs discovered that on the night of the shooting, Mr. Baldino was hanging out with his ex-girlfriend, Ms. O'Toole, at his apartment smoking methamphetamine with two others, Ms. Shahan and Mr. Withers, when Mr. Baldino and Mr. Withers suddenly left to take care of something. They were gone for about an hour and

returned edgy and anxious.  Mr. Withers then left with Ms. Shahan and Ms. O'Toole and drove around in a black Mustang for most of the night; he was driving erratically and acting paranoid.  Mr. Withers continued to drive around the next day with Ms. O'Toole and Mr. Baldino when eventually the car broke down.  A neighbor saw the three pushing the car into a parking space.

The police went to the apartment and tried to speak to Mr. Baldino who was there alone but hid from the police.  In the weeks following, Mr. Withers was overheard implying he committed the murder with Mr. Baldino and Mr. Baldino admitted he was the passenger in the black Mustang with Mr. Withers.

A month later, Mr. Baldino was arrested in a stolen car and he started crying and said to Ms. O'Toole, "I am going away for a long time because of Destin Withers' stupid ass."  But Mr. Baldino continued to deny his involvement to detectives, although he did admit he saw Mr. Withers with a gun before.  The gun used in the murder was eventually found but no DNA or fingerprints were recovered.

Detectives continued to investigate and in 2011, Ms. Shahan reported she was dating Mr. Baldino at the time of the murder and he bragged to her that he was the passenger in the car when Mr. Withers shot Mr. Vogler.  She said the motive concerned a robbery of methamphetamine.  In 2013, Ms. O'Toole then told detectives that Mr. Baldino admitted he was the passenger in the car with Withers, and he also admitted he was the last one holding the gun.

After Mr. Baldino and Ms. O'Toole were arrested on unrelated charges six months later, she told detectives that a month earlier, Mr. Baldino

4

admitted to shooting Mr. Vogler. But, while in custody, Mr. Baldino only told officers he was the passenger in the car when Mr. Withers shot Mr. Vogler.

While Mr. Withers was in custody, he sent a note to a fellow inmate admitting to killing Mr. Vogler.

## DISCUSSION

As we have noted, appellate counsel has filed a *Wende* brief and asks the court to review the record for error. To assist the court in its review, and in compliance with *Anders v. California* (1967) 386 U.S. 738 (*Anders*), counsel has identified the following possible issues that were considered in evaluating the potential merits of this appeal:

1. Did the trial court abuse its discretion in denying the section 1170.95 petition?

2. Did the trial court err in not appointing counsel after Baldino filed his petition?

3. As a matter of law, does Baldino's guilty plea and factual basis to the voluntary manslaughter refute Baldino's assertions?

We have reviewed the entire record as required by *Wende* and *Anders*. We have not discovered any arguable issues for reversal on appeal. Competent counsel has represented Baldino on this appeal.

DISPOSITION

The order denying Baldino's petition for resentencing under section 1170.95 is affirmed.

HUFFMAN, J.

WE CONCUR:

McCONNELL, P. J.

AARON, J.